**1250**

UNITED STATES of America, Plaintiff,

v.

**INDIANAPOLIS ATHLETIC CLUB, INC., Defendant.**

No. IP 90–C–1783.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 29, 1993.

See also, 785 F.Supp. 1336.

Charles J. Cannon, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, Jeffrey L. Hunter, Asst. U.S. Atty., Indianapolis, IN, for plaintiff.

John W. Boyd, Brian K. Peters, McHale Cook & Welch, Indianapolis, IN, for defendant.

ENTRY

BARKER, Judge.

The United States of America ("Plaintiff") moves the Court to enter summary judgment in its favor on the issue of the Indianapolis Athletic Club, Inc.'s ("IAC") tax liability on funds received from a mandatory fifteen percent service charge that the IAC added to its members' food and beverage bills during the period October 1, 1984 to December 31, 1984. The IAC presents the Court with a cross motion for summary judgment on the same issue. For reasons that will be explained below, the Court grants Plaintiff's motion.

BACKGROUND

The IAC is an Indiana non-profit corporation which operates a private club in downtown Indianapolis for the benefit of its members. Dining facilities are located in the club, and the IAC employs staff to prepare and serve food and beverages to its members and their guests. In lieu of permitting cash tipping directly to its wait staff, the IAC collected a fifteen percent "service charge" on its food and beverage sales in its dining facilities. This policy was implemented pursuant to the following IAC by-law:

> Inasmuch as a service charge for the benefit of employees is imposed upon food and beverage purchases within the club, it is the policy of the Club, and all members and guests are requested to comply therewith, that no gratuities be paid by members or guests to any employees of the Club.

Article XVII, Section 3, By-laws of the Indianapolis Athletic Club. The following notice of the service charge was printed on the club's menus: "As a convenience, all prices are subject to a 15% Service Charge and 6% Tax." The service charge was added directly to the bill and paid to the IAC, which then distributed the proceeds to the wait staff according to the receipts that they serviced. Of the service charges collected, approximately eighty-seven percent was allocated to

the IAC's payroll account, and the remaining thirteen percent was retained by the IAC as a collection fee. A portion of the service charges which were sent to the payroll account was used to compensate the employees at an hourly rate equal to the federal minimum wage. *See IAC's Statement of Proposed Findings of Fact and Conclusions of Law,* at ¶ 8.

Until 1985, the IAC treated the service charges as wages and paid the employer's share of the Federal Insurance Contributions Act ("FICA") tax on them. Beginning in the third quarterly reporting period in 1985, however, the IAC treated the service charges as tips and ceased paying FICA tax. On February 16, 1988, the IAC filed a claim seeking a refund of $2,767.59 in overpayments; it stated that: "[t]he club inadvertently remitted the employer's share of FICA tax on employee tips. Taxable tips to employees are not subject to employer's share of FICA Tax, therefore the entire request for refund results from this oversight." The Internal Revenue Service ("IRS") subsequently refunded the money with interest. The IRS now believes that its refund was in error because the "tips" which the IAC referred to in its claim are, in the view of the IRS, wages within the meaning of Internal Revenue Code § 3111. *See* 26 U.S.C. § 3111 (1989).

## DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Proc. 56(c). In passing on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or determine the truth of the matter, but it is instead to decide whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is especially appropriate where the issues in dispute are purely legal, *see, e.g., American Jewish Congress v. City of Chicago,* 827 F.2d 120, 123 (7th Cir.1987), such as applying a defined term in a statute. In these circumstances, the need for trial is avoided because there are no genuine issues of material fact that must be resolved.

 Section 3111 of the Internal Revenue Code imposes an excise tax on employers for every individual in their hire in an amount equal to an established percentage of the employee's wages. This "FICA" tax is used to fund social security benefits. Section 3121(a) defines wages as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash; except that such terms shall not include— ...

(a)(12)(A) tips paid in any medium other than cash

(B) cash tips received by an employee in any calendar month in the course of his employment by an employer unless the amount of such cash tips is $20 or more;

26 U.S.C. § 3121 (1989). As Plaintiff aptly notes, "[i]f the service charge collected by the IAC and paid to its employees constitute wages ..., the IAC is required to pay the employment excise taxes set forth therein." *Brief of United States in Support of Motion for Summary Judgment,* at 5. In support of its argument that the service charges were wages, Plaintiff relies on a number of Internal Revenue Service rulings which hold that service charges collected by an employer and paid to its employees are wages for purposes of federal employment taxes. Plaintiff notes that "[t]hese revenue rulings have consistently maintained a distinction between service charges that are collected by the employer, be it club, restaurant or hotel, and the traditional gratuity or "tip" that is paid directly to the employee by the customer." *Plaintiff's Brief in Support of Summary Judgment,* at 6. A revenue ruling may not be disregarded unless it is plainly contrary to the statute which it implements. *See Strick Corp. v. United States,* 714 F.2d 1194, 1197 (3rd Cir. 1983), *cert. denied,* 466 U.S. 971, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984); *Whattoff v. United States,* 355 F.2d 473, 478 (8th Cir. 1966). Revenue Ruling 69–28 describes the following factual scenario and rule:

Situation 1. A Club does not permit the tipping of its employees in cash but in lieu

thereof adds 10 percent to the amount of the cafe charges made to the accounts of club members. The added amounts are set aside in a fund, which is divided and disbursed monthly to the club's waiters. It is stated by the club that the amount the waiters receive through this plan does not affect the regular wages paid to them.

In this situation the 10 percent added to the cafe charge is an arbitrary charge fixed by the club that the member is required to pay and is clearly not a gratuity. Moreover, the added charge is not paid by the customer directly to the employee but is paid to the club and becomes a part of the club's funds. In other words, the transaction with respect to the 10 percent added charge is between the customer and the club and not between the customer and the employee of the club. The employee does not share in the fund on account of services rendered individually to any one customer. Under the circumstances, when the fund made up from the 10 percent added charges is divided and disbursed to the waiters by the club it is disbursed to them as employees of the club in consideration for services rendered to the club as the waiters' employer. The sums so disbursed are "wages" paid by the club to its employees, for purposes of the Federal Insurance Contributions Act . . .

Rev.Rul. 69–28.

IAC argues that the service charge is nothing more than a tip, or a payment by its members to the employees for services rendered to them, and not a wage as defined under section 3121(a). In its view, the use of the service charges to satisfy minimum wage requirements does not make the payment a wage; instead, the tips were used merely to calculate the minimum wage that federal law requires. "[E]ven employers of employees who receive cash tips are entitled to pay wages less than minimum requirements, and then apply the tips to satisfaction of minimum wage requirements. This is because, under federal law (29 U.S.C. § 203(m)), tips, though not constituting wages, are used in calculating satisfaction of minimum wage requirements." *Brief in Support of Defendant's Cross–Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment,* at 7.

During the period in question, Section 203(m) stated in pertinent part:

> In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage rate, except that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee. The previous sentence shall not apply with respect to any tipped employee unless (1) such employee has been informed by the employer of the provisions of this subsection, and (2) all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m) (1978). The implementing regulations for this section define "tips" as follows:

> **§ 531.52 General Characteristics of "tips."** A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity. In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer. Only tips actually received by an employee as money belonging to him which he may use as he chooses free of any control by the employer, may be counted in determining whether he is a "tipped employee" within the meaning of the Act and in applying the provisions of section 3(m) which govern wage credits for tips.

29 C.F.R. § 531.52 (1992). The implementing regulations also provide examples of compensation which is and is not considered to be a "tip":

## § 531.55 Examples of amounts not received as tips.

(a) A compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip received in applying the provisions of section 3(m) and 3(t). Similarly, where negotiations between a hotel and a customer for banquet facilities include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips received. Likewise, where the employment agreement is such that amounts presented by customers as tips belong to the employer and must be credited or turned over to him, the employee is in effect collecting for his employer additional income from the operations of the latter's establishment. Even though such amounts are not collected by imposition of any compulsory charge on the customer, plainly the employee is not receiving tips within the meaning of section 3(m) and 3(t). The amounts received from customers are the employer's property, not his, and do not constitute tip income to the employee.

29 C.F.R. § 531.55 (1992).

Having carefully considered the arguments of the parties, the Court finds that the IAC's service charge must be considered part of the wait staff's wages. The uncontroverted facts indicate that the service charge was mandatory and applied to guests as well as IAC members, and that the IAC collected the service charges, apportioned eighty-seven percent of these funds to the general payroll account, and retained the remaining thirteen percent as an administrative fee. This practice is the same as that noted in Revenue Ruling 69–28 except that there the employer retains no portion of the charges and the employee, unlike the IAC wait staff, "does not share in the fund on account of services rendered individually to any one customer." Rev.Rul. 69–28. Specifically, (1) the member is required to pay the service charge, and (2) the additional charge is not paid by the member directly to the employee but instead is paid to the club and becomes a part of the club's funds subject to deduction and reallocation. While the Court recognizes the limit-ed precedential value of revenue rulings, it can find no error in the reasoning presented in Ruling 69–28 which would warrant setting it aside for purposes of this cause. It is not plainly contrary to 26 U.S.C. § 3121(a) and, as explained below, the difference in how the proceeds are apportioned to the employees does not control the Court's resolution of this cause.

The discretion to refuse payment is an essential element of a tip or gratuity. It is not lost on the Court that the language which appears on the club's menu is "service charge." "Charge" means "to make liable for" or to "ask as a price." *See* Webster's New World Dictionary (1957). The menu's language indicates that the customer lacked the discretion to refuse payment. Once the service was rendered, the charge was levied automatically as all prices were subject to the same fifteen percent assessment. IAC argues that the service charge is not "truly mandatory" because its members remained free to decide collectively to change the policy. In its view, the fee was assessed for the sake of the members' convenience only, and can not be considered compensation to IAC employees for services rendered to the IAC. The problem with this reasoning is that a tip, by its nature, is an expression of gratitude freely given, and a collective will imposed on an individual forcing compliance with this will can hardly be said to be freely given. This finding is consistent with the definition of "tips" used in the aforementioned federal regulations, which emphasize the voluntariness of the payment. "Whether a tip is to be given, and its amount are matters determined solely by the customer...." 29 C.F.R. § 531.52 (1992). Another problem with the IAC's argument is that it has no relevance to the guests who dined at the IAC. Even if the membership were unanimous in their views about the virtues of the service charge policy, it is not possible to infer that their guests shared the same attitude.

The second factor which indicates that the disputed payments were wages is that the IAC did not convey the service charge directly to the wait staff without deduction. Instead, it shuttled the charges into its general

payroll fund, and before any money was delivered to the employees, it took a significant percentage as an administration fee. These practices are hard to reconcile with the underlying premise of a tip, which has nothing to do with business efficiency and instead is focused on the customer's gratitude to the service provider. By mingling the service charges with other wage funds and then taking its "cut" when disbursing the funds to the employees, the IAC so changed the nature of the transaction that it can hardly be considered anything but outright compensation for the service and not an expression of gratitude from the customer.

The conclusion which the Court reaches today also is consistent with regulations promulgated under 26 U.S.C. § 203(m), which outlines minimum wage calculations for tipped employees. IAC believes that it was entitled to use the service charges as a credit in calculating the minimum wage for its wait staff but that the charges were not actually part of the minimum wage payments that it made to them. The language of 29 C.F.R. § 531.55 resolves this matter: "A compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip received in applying the provisions of section 3(m) and 3(t)." 29 C.F.R. § 531.55 (1992).

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion for summary judgment is granted, and the Defendant's cross-motion for summary judgment is denied. The fifteen percent dining service charge which the IAC levied on its members and guests during the period October 1, 1984 to December 31, 1984 constitutes wages within the meaning of 26 U.S.C. § 3111.

It is so ORDERED.